**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendi Elizabeth Andriano, | No. CV-16-01159-PHX-SRB |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Charles L. Ryan, et al., | |
| Respondents. | |

Before the Court is Petitioner Wendi Andriano's Motion for Evidentiary Development. (Doc. 45.) Respondents filed a response in opposition to the motion and Andriano filed a reply. (Docs. 60, 63.) The motion is denied as set forth herein.

## I. BACKGROUND

In 2004, Andriano was convicted of one count of first-degree murder and sentenced to death for the killing of her terminally ill husband. The following facts are taken from the opinion of the Arizona Supreme Court affirming the conviction and sentence, *State v. Andriano*, 215 Ariz. 497, 161 P.3d 540 (2007), and from the Court's review of the record.

At about 2:15 a.m. on October 8, 2000, Andriano called Chris, a coworker who lived at the same apartment complex, and asked her to watch the Andrianos' two children while she took her husband, Joe, to the doctor. Andriano met Chris outside the apartment and told her Joe was dying. She also stated that she hadn't called 911 yet. Chris urged her to do so.

Upon entering the apartment, Chris found Joe lying on the living room floor in the fetal position. He had vomited, appeared weak, and was having difficulty breathing. While Andriano was in another room calling 911, Joe told Chris that he needed help and had "for a long time." He asked why it was taking 45 minutes for the paramedics to show up.

Chris heard the paramedics arrive and went outside to direct them to the apartment. As the paramedics were unloading their equipment, Andriano came out of the apartment screaming at them to leave. She returned to the apartment and slammed the door. Chris and the paramedics knocked on the door but no one answered. The Phoenix Fire Department called the Andrianos' home telephone in an attempt to get Andriano to open the door. They notified the paramedics that contact had been made with someone in the apartment who would come out to speak with them. Instead of coming out the front door, which opened onto the living room, Andriano went out through the back door, climbed over the patio wall, and walked around the apartment building to the front door. She had changed her shirt and her hair was wet. She told the paramedics that Joe was dying of cancer and had a do-not-resuscitate order. The paramedics left without entering the apartment.

Andriano called 911 again at 3:39 a.m. The same paramedics responded. When they entered the apartment they found Joe lying dead on the floor in a pool of blood. As determined by the medical examiner, Joe had sustained brain hemorrhaging caused by more than 20 blows to the back of his head. He had also suffered a stab wound to the side of his neck that severed his carotid artery. A broken bar stool covered in blood was found near Joe's body, along with pieces of a lamp, a bloody kitchen knife, a bloody pillow, and a belt.

Trace amounts of the poison sodium azide were found in Joe's blood and gastric contents, and in the contents of a pot and two soup bowls in the kitchen. Police also found gelatin capsules filled with sodium azide.

Defensive wounds on Joe's hands and wrists indicated that he was conscious for at least part of the attack. Blood spatter and other evidence indicated that he was lying down

during the attack. The absence of arterial spurting on the belt and the knife indicated that the items were placed beside Joe's body after he died.

At trial, Andriano testified that Joe, who was suffering from terminal cancer and had been contemplating suicide, decided to take his life that night and swallowed several of the sodium azide capsules. The poison failed to kill him, however, and he became verbally abusive, accusing Andriano of infidelity and violently attacking her when she admitted to an affair. Andriano testified that Joe tried to strangle her with a telephone cord but she was able to cut the cord with a knife. When Joe picked up the knife she struck him with the bar stool in self-defense. She then hid in the bathroom but when she returned Joe still had the knife in his hand and was threatening to kill himself. She testified that she tried to stop him and during the resulting struggle his neck was cut.

Andriano also presented evidence, including expert testimony, that she was a victim of domestic abuse. Andriano testified that throughout the course of their marriage Joe had been emotionally, physically, and sexually abusive. The expert testified about the psychological effects of domestic abuse.

The jury found Andriano guilty of first-degree murder. During the penalty phase, the jury found one aggravating factor: that the murder had been committed in an "especially cruel manner" under A.R.S. § 13-751(F)(6). The jury then found that the evidence presented in mitigation was not sufficiently substantial to call for leniency and returned a verdict of death.

Andriano sought post-conviction relief ("PCR") in state court, filing a petition raising claims of ineffective assistance of trial and appellate counsel.[1] (PCR pet., Doc. 28-1, Ex. OOOOO.) The court dismissed the majority of Andriano's claims as precluded or not colorable, but granted a hearing on her penalty-phase ineffectiveness and conflict-of-interest claims. (ME 10/30/12.)[2] After an eight-day evidentiary hearing, the court

---

[1] Maricopa County Superior Court Judge Brian Ishikawa presided over the trial and PCR proceedings.

[2] "ME" refers to the minute entries of the state court.

dismissed both claims. (ME 11/1/14.) The Arizona Supreme Court denied review without comment.

Andriano filed a petition for writ of habeas corpus in this Court on March 6, 2017. (Doc. 17.) She filed the pending motion for evidentiary development on December 4, 2017. (Doc. 45.)

## II. APPLICABLE LAW

### A. AEDPA

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams (Terry) v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), the Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Murray (Robert) v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)."). However, *Pinholster* does not bar evidentiary development where the petitioner has satisfied § 2254(d) based solely on an assessment of the state court record. *See Crittenden*

*v. Chappell*, 804 F.3d 998, 1010 (9th Cir. 2015); *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013).

For claims not adjudicated on the merits in state court, federal review is generally not available when the claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3).

For unexhausted and defaulted claims, "federal habeas review . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *Coleman* further held that ineffective assistance of counsel in PCR proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Court established a "narrow exception" to the rule announced in *Coleman*. Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14). The Ninth Circuit has explained that "PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

*Martinez* applies only to claims of ineffective assistance of trial counsel; it has not been expanded to other types of claims. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to substantially

expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's argument that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas); *see Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) (explaining that the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel).

## B.    Evidentiary Development

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Rule 6 of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Whether a petitioner has established "good cause" for discovery requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (internal quotation marks omitted).

An evidentiary hearing is authorized under Rule 8 of the Rules Governing § 2254 Cases. Pursuant to § 2254(e)(2), however, a federal court may not hold a hearing unless it first determines that the petitioner exercised diligence in trying to develop the factual basis of the claim in state court. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000). If the failure to develop a claim's factual basis is attributable to the petitioner, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In addition, "the facts underlying the claim [must] be sufficient to establish

by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." *Id.*

When the factual basis for a claim has not been fully developed in state court, a district court first determines whether the petitioner was diligent in attempting to develop the record. *See Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). The diligence assessment requires a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams (Michael)*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to investigate and present the evidence to the state court. *Id.* at 438–39, 442. The Ninth Circuit has explained that "a petitioner who 'knew of the existence of [ ] information' at the time of his state court proceedings, but did not present it until federal habeas proceedings, 'failed to develop the factual basis for his claim diligently.'" *Rhoades v. Henry*, 598 F.3d 511, 517 (9th Cir. 2010) (quoting *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005), *overruled on other grounds by Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2016)).

An evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Likewise, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Finally, under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court is authorized to expand the record to include additional material relevant to the

petition. The purpose of expansion of the record under Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977); *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (explaining that the need for an evidentiary hearing may be obviated by expansion of record).

Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to the same extent that it limits the availability of an evidentiary hearing. *See Cooper–Smith*, 397 F.3d at 1241 (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence); *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam). Accordingly, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, he must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2).

## III.   ANALYSIS

Andriano seeks evidentiary development on 26 claims or subclaims in her habeas petition, including both exhausted and unexhausted claims. A number of the claims allege ineffective assistance of counsel. Because these require a different analytical framework, the Court's discussion proceeds as follows.

## A.   Non-Ineffective Assistance of Counsel Claims

### 1.   Exhausted claims

Claim 4:

Andriano alleges that the trial court violated her due process rights by admitting evidence of her extramarital affairs and her attempts to fraudulently obtain life insurance on her husband. (Doc. 17 at 87–101.) Andriano seeks to depose the prosecutor and requests a subpoena duces tecum to the Maricopa County Attorney's Office for his personnel file. (Doc. 45 at 21–25.) She also requests expansion of the record to include appellate counsel Peg Green's notes; documents relating to the Arizona Capital Representation Project's assistance with Andriano's appeal; declarations from Green,

ethics attorney Karen Clark, sodium-azide expert Dr. Eric Betterton, trial witness James Yost, and trial counsel Patterson[3]; files relating to a bar complaint against the prosecutor; media reports about the prosecutor; and portions of the Phoenix Police Departmental Report concerning this case. (*Id.*, & Ex's 10, 11, 25, 28–34.) Andriano also seeks an evidentiary hearing. (*Id.*)

The Arizona Supreme Court rejected this claim on the merits. *Andriano*, 215 Ariz. at 502–03, 161 P.3d at 545–46. The court held that the evidence was admissible under Rule 404(b) of the Arizona Rules of Evidence and was not unfairly prejudicial. *Id.* Unless this ruling is contrary to or an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1), evidentiary development is prohibited. The ruling does not meet that standard.

State court evidentiary rulings cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks and citation omitted); *see Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991). The AEDPA further restricts the availability of federal habeas review for evidentiary claims because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101; *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."). Because it does not satisfy § 2254(d)(1), Claim 4 is denied as without merit.

---

[3] Andriano indicates that she will supplement her motion for evidentiary development with the Patterson declaration when it is available, but the declaration has not been filed. (*See* Doc. 45 at 24.)

Moreover, whether or not the Arizona Supreme Court's ruling satisfies § 2254(d), evidentiary development is not warranted because the claim presents a legal question and can be resolved on the state court record. *Beardslee*, 358 F.3d at 585–86; *Totten*, 137 F.3d at 1176.

Claim 17:

Andriano alleges that A.R.S. § 13–751(F)(6), the especially cruel aggravating factor, is facially vague and overbroad. (Doc. 17 at 155–65.) She seeks discovery in the in the form of a subpoena to each Arizona county attorney's office. (Doc. 45 at 41–42.) The request is denied.

The Arizona Supreme Court rejected this claim on direct appeal. *Andriano*, 215 Ariz. at 505–06, 161 P.3d at 548–49. *Pinholster* bars evidentiary development unless the claims satisfies § 2254(d). It does not.

The United States Supreme Court has upheld the (F)(6) aggravating factor against allegations that it is vague and overbroad, rejecting a claim that Arizona has not construed the factor in a "constitutionally narrow manner." *See Lewis v. Jeffers*, 497 U.S. 764, 774–77 (1990); *Walton v. Arizona*, 497 U.S. 639, 649–56 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 556 (2002). Andriano's challenge to the (F)(6) factor is without merit, and Claim 17 is denied.

Claim 22:

Andriano alleges that the death penalty is categorically cruel and unusual punishment. (Doc. 17 at 220–23.) She seeks to expand the record with reports questioning the deterrent value of capital punishment. (Doc. 45 at 56–57, & Ex's 38–40.) The request is denied.

The Arizona Supreme Court rejected this claim on direct appeal. *Andriano*, 215 Ariz. at 513, 161 P.3d at 556. *Pinholster* bars evidentiary development unless the claim satisfies § 2254(d), which Claim 22 does not. There is no clearly established federal law supporting the claim that the death penalty is categorically cruel and unusual punishment or that it serves no purpose. *See Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *Hall v. Florida*, 134 S. Ct. 1986, 1992–93 (2014). Claim 22 is denied.

Claim 31:

Andriano alleges that Arizona's capital sentencing statute is unconstitutional because it fails to channel the jurors' discretion. (Doc. 17 at 236–39.) She seeks a subpoena to each Arizona county attorney's office. (Doc. 45 at 57.) The request is denied.

The Arizona Supreme Court rejected this claim on direct appeal. *Andriano*, 215 Ariz. at 513–14, 161 P.3d at 556–57. The claim does not satisfy 2254(d). Rulings of both the Ninth Circuit and the United States Supreme Court have upheld Arizona's death-penalty statute against allegations that particular aggravating factors do not adequately narrow the sentencer's discretion. *See Jeffers*, 497 U.S. at 774–77 (1990); *Walton*, 497 U.S. at 649–56; *Woratzeck v. Stewart*, 97 F.3d 329, 335 (9th Cir. 1996). The Ninth Circuit has explicitly rejected the argument that Arizona's death penalty statute is unconstitutional because it "does not properly narrow the class of death penalty recipients." *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998). *Pinholster* bars evidentiary development, and the claim is denied as meritless.

### 2. Unexhausted claims

Claim 1 (prosecutorial misconduct):

In this subclaim of Claim 1, Andriano alleges that the prosecutor engaged in misconduct throughout her trial. (Doc. 17 at 35–59.) Specifically, she alleges that he inappropriately focused on salacious, irrelevant, and misleading information about her sexual history; misstated facts, interjected his personal opinion, and improperly vouched for the State's witnesses and experts; and made unfounded attacks on defense witnesses. (*Id.*; *see* Doc. 42 at 23.) In support of this claim Andriano incorporates the requests for evidentiary development she made with respect to Claim 4. The requests are denied.

Andriano did not raise this claim on appeal. When she raised the claim during the PCR proceedings, the court found it "waived pursuant to Rule 32.2(a)(3)."[4] (ME 10/30/12 at 3.) Andriano argues that the default of the claim is excused by the ineffective

---

[4] The Court rejects Andriano's argument that Arizona's procedural-default rules are not adequate and independent. *See Stewart v. Smith*, 536 U.S. 856, 860–61 (2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

assistance of appellate and PCR counsel. (Doc. 45 at 21.) As noted, ineffective assistance of PCR counsel excuses only defaulted claims of ineffective assistance of trial counsel. *See Hunton*, 732 F.3d at 1126–27. It does not apply to the procedural misconduct allegations in Claim 1.

Before ineffective assistance of appellate counsel may be used as cause to excuse a procedural default, the particular ineffective assistance allegation must first be exhausted in state court as an independent claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray v. Carrier*, 477 U.S. 478, 489–90 (1986) (explaining that counsel's ineffectiveness in failing to preserve a claim for review in state court can excuse a procedural default only if that ineffectiveness itself constitutes an independent constitutional claim); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

PCR counsel raised a claim alleging that appellate counsel performed ineffectively by failing to raise a claim of prosecutorial misconduct. (PCR pet., Doc. 28-1, Ex. OOOOO at 70.) The PCR court denied the claim, finding that "the prosecutor did not commit misconduct." (ME 10/30/12 at 6; *see id.* at 3.)

For purposes of determining whether Andriano is entitled to evidentiary development, it is not necessary to resolve whether this claim of ineffective assistance of appellate counsel constitutes an independent claim excusing the default of the underlying prosecutorial misconduct claim.

The allegations of misconduct all concern the prosecutor's conduct during trial. (Doc. 17 at 35–59.) The only question is a legal one: whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Additional, extra-record evidence is not needed to resolve the issue. *See Beardslee*, 358 F.3d at 585 (finding evidentiary hearing not warranted on claim of ineffective assistance based on counsel's failure to object to prosecutorial misconduct because "[t]he relevant facts . . . involve prosecutorial comments entered directly into the court's record, leaving no disputed facts

at issue"); *see also Darden v. Wainwright*, 477 U.S. 168, 181–83 (1986) (stating that habeas review of a prosecutorial misconduct claim necessarily includes a careful review of the totality of the state court record to determine whether the alleged misconduct denied petitioner a fair trial). Evidentiary development is not required on an issue that can be resolved by reference to the state court record. *See Totten*, 137 F.3d at 1176.

<u>Claims 6, 10, 11, 15, and 18:</u>

These unexhausted claims remain procedurally defaulted. Evidentiary development is denied.

In Claim 6, Andriano alleges that the trial court's admission of "unreliable evidence" regarding sodium azide violated the Fourteenth Amendment. (Doc. 17 at 106–11.) She requests discovery, expansion of the record, and an evidentiary hearing. (Doc. 45 at 34–39.) In Claim 10, Andriano alleges that the trial court limited her *voir dire* of potential jurors and erroneously failed to strike a number of jurors. (Doc. 17 at 129–33.) In Claim 11, Andriano alleges that the jurors engaged in misconduct by considering sentencing outcomes during their aggravation-phase deliberations. (*Id.* at 134–37.) She seeks to depose all the jurors and requests an evidentiary hearing at which the jurors would testify.[5] (Doc. 45 at 40.) In Claim 15, Andriano alleges that the trial court erred in permitting the rebuttal testimony of an expert, Dr. Michael Bayless, who was unqualified to testify on the topic of domestic violence. (*Id.* at 151.) She seeks to expand the record with Bayless' file from the Arizona Board of Psychological Examiners and other documents (Doc. 45 at 41.) In Claim 18, Andriano alleges that the Arizona Supreme Court engaged in factfinding, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and found two incorrect facts.[6] (Doc. 17 at 165–67.)

---

[5] As noted below in the Court's discussion of Claim 20B, the evidence Andriano seeks about juror deliberations is prohibited under Rule 606(b) of the Federal Rules of Evidence.

[6] The factual errors Andriano cites are the court's statements that Andriano testified that Joe slit his own throat and that the blows to his head left his brain matter exposed. *See Andriano*, 215 Ariz. at 501, 502, 161 P.3d at 544, 545.

The Court rejects Andriano's argument that the default of these claims is excused by the ineffective assistance of appellate and PCR counsel. Ineffective assistance of appellate counsel does not apply because the claim that appellate counsel performed ineffectively on these issues is itself procedurally defaulted. *See Carpenter*, 529 U.S. at 452; *Murray v. Carrier*, 477 U.S. at 489. Ineffective assistance of PCR counsel is inapplicable because it excuses only defaulted claims of ineffective assistance of trial counsel. *See Hunton*, 732 F.3d at 1126–27. Andriano asserts no other cause for excusing the procedural default.

Accordingly, Claims 6, 10, 11, 15, and 18 are denied as procedurally defaulted and barred from federal review.

Claims 35 and 36:

In Claim 35, Andriano alleges that the practice of death-qualifying potential jurors is unconstitutional. (Doc. 17 at 248–58.) She seeks discovery in the form of a subpoena duces tecum to the Maricopa County Attorney's Office for documents relating to jury selection in capital cases from 2002 through 2007. (Doc. 45 at 58.) In Claim 36, Andriano alleges that executing her after a prolonged incarceration would constitute cruel and unusual punishment. (Doc. 17 at 259–62.) She seeks to depose Charles Ryan, the Director of the Arizona Department of Corrections, and warden Kim Currier on the conditions of death row. (Doc. 45 at 59.) She also seeks an evidentiary hearing. (*Id.*) The requests are denied.

Andriano did not raise these claims in state court. The claims are therefore defaulted, and because they fall outside the scope of *Martinez*, *see Hunton*, 732 F.3d at 1126–27, the default is not excused and they remain barred from federal review. The claims are also meritless.

Clearly established federal law holds that the death-qualification process in a capital case does not violate a defendant's right to a fair and impartial jury. *See Lockhart v. McCree*, 476 U.S. 162, 178 (1986); *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *see also Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (denying challenge to death qualification of Arizona jurors). Claim 35 is denied.

"The Supreme Court has never held that execution after a long tenure on death row is cruel and unusual punishment." *Allen v. Ornoski*, 435 F.3d 946, 958 (9th Cir. 2006); *Smith v. Mahoney*, 611 F.3d 978, 998 (9th Cir. 2010). While it has been presented with multiple opportunities to do so, the Supreme Court has declined to address the issue. *See, e.g.*, *Boyer v. Davis*, 136 S. Ct. 1446 (2016); *Valle v. Florida*, 564 U.S. 1067 (2011); *Lackey v. Texas*, 514 U.S. 1045 (1995). Because it is unsupported by clearly established federal law, Claim 36 is denied.

## B.     Ineffective Assistance of Counsel Claims

Andriano was represented at trial by lead counsel Daniel Patterson of the Maricopa County Public Defender's Office, and David DeLozier who was originally retained by Andriano's family.[7] Andriano was represented on appeal by Brent Graham of the Maricopa County Public Defender's Office and Peg Green. During the PCR proceedings she was represented by the firms of Lewis and Roca and Foley & Lardner LLP. (*See* Doc. 17 at 30.)

Andriano alleges numerous instances of ineffective assistance of trial and appellate counsel. In support of these claims she requests various forms of evidentiary development. She seeks to depose members of the defense team, including trial counsel Patterson and DeLozier, as well as Scott MacLeod and Patrick Linderman, the mitigation specialists who worked on her case. (*See* Doc. 45 at 28.) She seeks to expand the record with an affidavit from Patterson, a report from psychologist Dr. Diana Barnes diagnosing Andriano with bipolar disorder and Post-Traumatic Stress Disorder (PTSD) and stating that Andriano experienced symptoms consistent with post-partum depression, and a declaration from Dr. Marlene Winell diagnosing Andriano with a condition called "Religious Trauma Syndrome." (*Id.* at 30–31.)

With respect to her claims of ineffective assistance of counsel during the sentencing phase of trial, Andriano seeks depositions of her mother and adoptive father;

---

[7] After Patterson's appointment DeLozier served as second chair pursuant to *Knapp v. Hardy*, 111 Ariz. 107, 523 P.2d 1308 (1974).

an OB/GYN who treated Andriano during her pregnancies; a social worker who spoke with her after the birth of one of her children; Joe Andriano's mother, father, and sister; people affiliated with Andriano's childhood church; and her former boyfriend Shawn King. (*Id.* at 28–30). She also asks to expand the record with various social-history documents and family records. (*Id.* at 30.)

Andriano further seeks depositions of PCR counsel in support of her argument that *Martinez* applies to excuse her defaulted claims of ineffective assistance of trial counsel. (*Id.* at 19–20.)

Finally, Andriano seeks an evidentiary hearing on her ineffective assistance claims. (*Id.* at 31–32.) Additional requests for evidentiary development will be discussed in the context of individual claims.

### 1. Exhausted Claims

Andriano raised these claims in the PCR proceedings and they were denied on the merits. As previously discussed, *Pinholster* bars the Court from considering new evidence unless the claims satisfy 28 U.S.C. § 2254(d). Evidentiary development is also inappropriate where the claim can be resolved on the state court record. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Claim 1:

Andriano alleges that trial and appellate counsel performed ineffectively by failing to challenge the prosecutor's misconduct. (Doc. 17 at 35–59.) She seeks the evidentiary development listed above for the claim's misconduct allegations. (Doc. 45 at 21–25.) As the Court previously explained, the record is complete with respect to the allegations of prosecutorial misconduct. *Beardslee*, 358 F.3d at 585. The request for evidentiary development is denied.

Claim 2:

Andriano alleges that DeLozier performed ineffectively due to an actual conflict of interest arising from the fact that he simultaneously represented her in her criminal proceeding and her parents in an adoption case involving her children. (Doc. 17 at 59–68.)

Andriano seeks to depose DeLozier, her mother, and her stepfather and to expand the record with DeLozier's state-bar files, a Pinal County Superior Court minute entry sanctioning DeLozier for his conduct in the adoption case, a transcript of PCR counsel's interview with DeLozier, and a letter DeLozier wrote to Andriano. (Doc. 45 at 25–27 & Ex's 1–3, 5.) She also seeks an evidentiary hearing.

The PCR court denied this claim on the merits. (ME 11/1/14 at 18–20.) The court found that "no conflict existed" because Andriano's interests and those of her parents "dovetailed, rather than diverged." (*Id.* at 19.)

Andriano fails to establish good cause for her discovery requests. Her requests to depose DeLozier, her mother, and her stepfather lack the specificity required by Rule 6. Andriano does not allege specific, relevant facts that might be found in the requested depositions. *See Murphy v. Johnson*, 205 F.3d 809, 813–14 (5th Cir. 2000) (explaining that "petitioners factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery under Rule 6."); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007) (denying discovery request because petitioner "did not comply with the specific requirements of Rule (6)(b); his request for discovery is generalized and does not indicate exactly what information he seeks to obtain.").

In addition, Andriano is not entitled to expansion of the record because she was not diligent in presenting these materials in state court. The information about DeLozier's representation of Andriano's parents was available during the PCR proceedings. *See Rhoades*, 598 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241. Andriano's requests for evidentiary development are denied.

Claim 3A:

Andriano alleges that counsel performed ineffectively by failing to investigate and present mitigation evidence. (Doc. 17 at 72–84.) Respondents argue that *Pinholster* prevents the development of new evidence in support of the claim. (Doc. 60 at 26.) They also contend that evidentiary development is barred because Andriano has not shown

good cause for the requested discovery and was not diligent in state court under 28 U.S.C. § 2254(e).[8] (*Id.* at 27–28.)

At sentencing, counsel presented evidence supporting several mitigating circumstances. Family members and friends testified about the stress Andriano experienced as a result of Joe's cancer, her good grades in school, her missionary and community work, her strong religious convictions, and her love for her children. Correction's personnel testified that Andriano was a model inmate; they also testified that she suffered from depression and anxiety and had attempted suicide. Counsel again presented evidence that Andriano was a domestic violence victim. They also offered evidence that Andriano may have been sexually abused by her biological father when she was around the age of two and that a member of her family's church exposed himself to her when she was between six and eight years old.

Subsequently, during the PCR proceedings, the state court granted an evidentiary hearing on Andriano's claim that trial counsel performed ineffectively in its presentation of mitigating evidence. Andriano presented evidence from three mental health experts: Dr. James Hopper, a clinical psychologist; Dr. George Woods, a neuropsychiatrist; and Dr. Joette James, a clinical neuropsychologist. Andriano's mother and several childhood friends also testified. Members of the defense team also testified, including Patterson, DeLozier, and mitigation specialist MacLeod. Finally, attorney Larry Hammond and mitigation specialist Keith Rohman testified about the deficiency in trial counsel's performance during mitigation. As detailed below, this testimony comprised a thorough presentation of Andriano's family background, social history, and mental health issues and their effect on her criminal behavior.

Dr. Hopper interviewed Andriano for a total of 52 hours; he also interviewed six other witnesses, reviewed 29 declarations and volumes of other documentary

---

[8] Because the Court finds that Andriano is not entitled to evidentiary development due to her lack of diligence in state court, the Court need not determine whether the claim satisfies § 2254(d) and is therefore exempt from *Pinholster*'s restriction on new evidence.

information, and prepared a 250-page report. (RT 2/3/14, a.m., at 28–31.)[9] His testimony detailed the trauma Andriano experienced during the various stages of her childhood, including, during her earliest years, severe neglect by her mother, emotional and physical abuse by her mother and biological father, Skip Robertson, and exposure to child molesters on her biological father's side of the family. (*Id.* at 35–59.)

Dr. Hopper testified that later, after her mother divorced her biological father, Andriano experienced the "disruptive force" of Alejo Ochoa entering her life. (*Id.* at 63.) Her family became involved with an abusive, cult-like religion that practiced corporal punishment for any lack of compliance and taught women to be submissive to their husbands. (*Id.* at 64, 68, 73–78; RT 2/3/14, p.m., at 6–23.) According to Dr. Hopper, "wherever [Andriano] was, she was surrounded by this kind of sick, disturbed, abusive community of people beating children and the [sic] ridiculing them and humiliating them and things like that." (RT 2/3/14, p.m., at 13.)

As she entered her teenage years Andriano continued to experience "unrelenting" emotional, physical, and sexual abuse from Alejo. (*Id.* at 6.) As discussed below, Dr. Hopper also described particular incidents of sexually inappropriate behavior and sexual abuse committed by Alejo. (*Id.* at 17–44.)

According to Dr. Hopper, the cumulative result of these traumas was that Andriano entered adulthood "severely damaged." (*Id.* at 45.) The trauma had left her unable to regulate impulses and emotions; she suffered from problems with executive functioning, dissociation and memory loss. (*Id.* at 45–49.)

Dr. Woods, in performing his neurological examination, interviewed Andriano three times, interviewed her mother, reviewed a "comprehensive social history," and analyzed the results of neuropsychological testing carried out by Dr. Myla Young. (RT 2/5/04 at 48–50.) Dr. Woods diagnosed Andriano with PTSD, complex type; bipolar disorder; dependent personality disorder; caregiver burden; and cognitive deficits. Dr. Woods testified that these "neuropsychiatric disorders and cognitive deficits" affected

---

[9] "RT" refers to the reporter's transcripts from Andriano's state court proceedings.

Andriano's conduct at the time of the murder. (*Id.* at 42–43, 111.) The conditions undermined her ability to handle emotionally complex and stressful circumstances and impaired her decision-making ability. (*See id.* at 111.)

Dr. Joette James, a clinical neuropsychologist, also reviewed the data from Dr. Young's examination. (RT 2/10/14 at 5.) Based on that information, Dr. James identified deficits in attention, executive functioning, and processing speed. (*Id.*) Dr. James testified that these conditions resulted in impulsivity, difficulty adjusting to changing circumstances, and a lower threshold for becoming overwhelmed and shutting down in stressful situations. (*Id.* at 24–48.)

Among the lay witnesses called at the PCR evidentiary hearing, Donna Ochoa, Andriano's mother, testified that there was a history of bipolar disorder and depression in her family and that she herself had suffered from severe bouts of depression. (RT 2/4/14 at 76–81.) She also testified that she neglected Andriano when she was born (*id.* at 91–95) and that she and Andriano's biological father, Skip, spanked Andriano from the time she was in diapers

Ochoa testified that on occasion she left Andriano alone with Skip's father, a known child molester; that Skip himself went to prison for molesting his stepdaughter and was accused of molesting his nieces; and that Skip said his brother Tommy probably molested Andriano. (*Id.* at 94–104.) She also testified that it became Andriano's duty to "minister" to Alejo by massaging his head and back. (*Id.* at 153–55.) Alejo also made inappropriate sexual comments to Andriano and bought sexy lingerie for her when she was just 12 or 13 years old. (*Id.* at 156.)

Andriano's childhood friends Kyre Lort, Jeri Lynn Cunningham, and Jasper Neace testified that the church-affiliated school they attended practiced corporal punishment, which involved striking children with the so-called "Rod of Correction." Lort and Cunningham also testified that Alejo sexually abused them when they were children. According to Cunningham, Alejo put his hand down her nightgown at a sleepover when she was 12; took photos of her and Andriano showering; and put his head in her crotch while she massaged him. (RT 2/4/14 at 222–29.) Lort testified that at sleepovers when

she was in third grade she and Andriano would play dress-up wearing Donna Ochoa's lingerie. (Id. at 47–51.) Alejo would invite Lort and Andriano to his room where he would be sitting in his underwear. He would touch the girls on their legs, breasts, and genitals, and they would touch his genitals. (*Id.* at 51–60.)

Patterson, DeLozier, and MacLeod all testified at the evidentiary hearing about their performance during the sentencing stage of Andriano's trial. Patterson testified that his mitigation strategy was to present Andriano as a good woman—a wonderful mother and daughter, a good Christian, a devoted wife, a hard worker. (*See, e.g.*, RT 2/7/14 at 48–49, 55.) Because this was a post-*Ring*[10] case, with the jury determining Andriano's sentence, Patterson front-loaded the presentation of mitigating information of Andriano's good character along with the evidence that she was a domestic assault victim who acted in self-defense. (*Id.* at 105–06.) The "good woman" defense was the most plausible because Patterson believed there was no credible evidence that Andriano suffered from a serious mental health issue or was sexually abused as a child. (*Id.* at 58–59.) Neither MacLeod, the mitigation specialist, nor DeLozier, who bore primary responsibility for the mitigation phase of trial, presented Patterson with negative information about the Ochoa family. (*Id.* at 37.) Patterson testified, however, that he should have started the mitigation investigation sooner and more closely supervised DeLozier and MacLeod. (*Id.* at 20.)

As just outlined, the PCR record clearly shows that in state court Andriano developed and presented extensive social history evidence, including the allegations of sexual abuse and evidence that she was raised and educated in a strict fundamentalist church, as well as mental health evidence to support her claim that counsel performed ineffectively at sentencing. Moreover, Andriano's trial counsel and mitigation specialist testified in state court.

In requesting evidentiary development in federal habeas court, Andriano now seeks to offer additional social history documents, all of which were available at the time

---

[10] *Ring v. Arizona*, 536 U.S. 584 (2002), held that a defendant is entitled to a jury determination of "the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty."

of the PCR proceedings (Doc. 45, Ex's 12–24), and the new expert opinions of Drs. Winell and Barnes (*see id.*, Ex's 26, 27).[11] The Court agrees with Respondents that Andriano was not diligent in presenting this evidence in state court.

All the information upon which Dr. Winell based her diagnosis of Religious Trauma Syndrome was not only available but presented during the PCR proceedings. For example, Dr. Hopper testified in detail about his opinion that the Andrianos' church was an "abusive cult." (RT 2/3/14, a.m., at 64, 68, 73–78.) Dr. Woods testified that Andriano suffered from bipolar disorder and PTSD (RT 2/5/14 at 42, 53–79), which are the same diagnoses reached by Dr. Barnes.

Andriano is correct that the diligence inquiry does not turn on whether the "new evidence could possibly have been discovered." *Libberton v. Ryan*, 583 F.3d 1147, 1165 (9th Cir. 2009). Nevertheless, Andriano certainly was aware of the newly-offered information, including the details of her social history and the nature of her mental health issues, at the time of the PCR proceedings. She now seeks to present that previously-available information in the form of new diagnoses offered for the first time here.

Under these circumstances, Andriano has "failed to develop the factual basis for [her] claim diligently." *Rhoades*, 598 F.3d at 517. "[W]here a petitioner was granted an evidentiary hearing . . . and the petitioner failed to take full advantage of that hearing, despite being on notice of and having access to the potential evidence and having sufficient time to prepare for the hearing, that petitioner did not exercise diligence in developing the factual foundation of his claim in state court." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1289 (11th Cir. 2012); *see Ward v. Hall*, 592 F.3d 1144, 1160 (11th Cir. 2010) (finding petitioner failed to exercise diligence where he was granted state court evidentiary hearing and "was afforded approximately three years to secure affidavits and witness testimony prior to" the hearing but failed to submit relevant

---

[11] The social history documents include Andriano's birth certificate, decree of adoption, marriage certificate, and employment records; Joe Andriano's hospital records; Donna Ochoa's divorce decree and marriage license; and records concerning Andriano's biological father. (Doc. 45, Ex's 12–24.)

evidence, despite the fact that he "managed to submit numerous exhibits and affidavits during the course of his hearings"); *Chandler v. McDonough*, 471 F.3d 1360, 1362 (11th Cir. 2006) (per curiam) (finding petitioner failed to exercise diligence in developing other evidence of claim, where petitioner "was given an evidentiary hearing on the claim in state court" and "also proffered in the state collateral proceeding a 195-page report in two parts by his expert on the issue").

In sum, Andriano had every opportunity in state court to obtain and present the information she now offers, all of which was available during the PCR proceedings. Her failure to take advantage of those opportunities constitutes a lack of diligence. Because she does not meet the exceptions set out in 28 U.S.C. § 2254(e)(2), she is not entitled to an evidentiary hearing or expansion of the record.

This lack of diligence also prevents Andriano from showing good cause for her discovery requests. *See Isaacs v. Head*, 300 F.3d 1232, 1249–50 (11th Cir. 2002) (explaining that a petitioner does not establish good cause for discovery if he was not diligent in developing the evidence in state court). In addition, Andriano does not articulate any basis to believe that depositions of Patterson, DeLozier, and MacLeod will result in evidence not presented during the PCR proceedings. *Murphy*, 205 F.3d at 813–14; *Teti*, 507 F.3d at 60.

Evidentiary development is therefore denied with respect to Claim 3A.

Claim 19B:

Andriano alleges that trial counsel performed ineffectively by failing to retain a mental health expert to pursue a diminished-capacity defense during the guilt phase of her trial. (Doc. 17 at 175–80.) The PCR court denied this claim, finding that counsel did not perform ineffectively for failing to raise such a defense because under Arizona law evidence of mental illness was not admissible to negate the *mens rea* element of the murder charge.[12] (ME 10/30/12 at 5.)

---

[12] In *State v. Mott*, 187 Ariz. 536, 931 P.2d 1046, 1051 (1997), the Arizona Supreme Court explained that "Arizona does not allow evidence of a defendant's mental

- 23 -

Andriano seeks an evidentiary hearing and expansion of the record to include the reports from Drs. Barnes and Winell. (Doc. 45 at 47–48 & Ex's 26–27.) The requests are denied.

For the reasons set out with respect to Claim 3A, Andriano is not entitled to evidentiary development on this claim. She was not diligent in state court in developing this evidence. In addition, *Pinholster* applies to bar new evidence because the PCR court's decision denying the claim was neither contrary to nor an unreasonable application of clearly-established federal law under 28 U.S.C. § 2254(d). Finally, the materials are unnecessary for the Court to resolve this record-based claim. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Claim 19F:

Andriano alleges that counsel performed ineffectively by failing to request a jury instruction on lesser-included offenses. (Doc. 17 at 193–97.) The PCR court denied the claim. (ME 10/20/12 at 5.)

In addition to the discovery requests previously discussed, Andriano asks to expand the record with an email between Patterson and Donna Ochoa. (Doc. 45 at 49 & Ex. 6.) The requests are denied. The materials are unnecessary for the Court to resolve this record-based claim. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Claim 20C:

Andriano alleges that counsel performed ineffectively in the aggravation stage of sentencing by failing to present mental health evidence. (Doc. 17 at 204.) She seeks to expand the record to include the declarations of Dr. Barnes and Dr. Winell. (Doc. 45 at 50–51.) The request is denied.

---

disorder short of insanity either as an affirmative defense or to negate the mens rea element of a crime." Accordingly, a defendant cannot present evidence of mental disease or defect to show that he lacked the capacity to form the requisite mental state for a charged offense. *Id*. at 1050; *see Clark v. Arizona*, 548 U.S. 735 (2006) (upholding the constitutionality of the *Mott* rule and finding that the exclusion of expert testimony regarding diminished capacity does not violate due process).

Counsel raised this claim during the PCR proceedings and the court denied it. (*See* ME 11/1/14 at 12–16.) For the reasons set out with respect to Claim 3A, Andriano is not entitled to evidentiary development on this claim. She was not diligent in state court in developing this evidence. The factual bases for the new diagnoses were apparent during the PCR proceedings. *See Rhoades*, 598 F.3d at 517 (9th Cir. 2010).

<u>Claims 21A and 21B:</u>

Claim 21 consists of various allegations of ineffective assistance of appellate counsel. In Claim 21A, Andriano alleges that appellate counsel performed ineffectively by failing to raise the conflict-of-interest claim set out in Claim 2. (Doc. 17 at 212.) In Claim 21B, Andriano alleges that appellate counsel performed ineffectively by failing to raise a claim that the trial court erroneously ruled on a hearsay objection. (*Id.* at 213.) The PCR court rejected the claims. (ME 10/30/12 at 6.)

Evidentiary development is not warranted because the record is complete with respect to these aspects of appellate counsel's performance. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176. "When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal . . . it is the exceptional case that could not be resolved on an examination of the record alone." *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986). This is not one of those "exceptional cases." Andriano has not identified any disputed facts relevant to his appellate ineffective assistance claims. *See Beardslee*, 358 F.3d at 585.

**2.      Unexhausted Claims**

Andriano did not raise these claims in state court. They are defaulted and, unless the default is excused by the ineffective assistance of PCR counsel, barred from federal review. Evidentiary development is also inappropriate for claims that can be resolved on the existing state court record.

<u>Claim 3B:</u>

Andriano alleges that counsel performed ineffectively by failing to object to the trial court's instruction that she could receive a parole-eligible life sentence if not sentenced to death. (Doc. 17 at 84–87.)

Andriano seeks discovery in the form of depositions of Patterson, DeLozier, MacLeod, and Linderman, an evidentiary hearing, and expansion of the record to include the Patterson declaration. (Doc. 45 at 32–33.) The requests are denied. The materials are unnecessary for the Court to resolve this record-based claim. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Claim 19A:

Andriano alleges that counsel performed ineffectively by failing to retain a qualified expert to challenge the State's evidence that sodium azide was present in the food samples as well as in Joe's blood and gastric contents. (Doc. 17 at 170–75.) Because the presence of sodium azide in Joe's body is consistent with Andriano's version of events, this claim focuses on the evidence of its presence in the food. Andriano alleges that the tests performed by the state might have failed to distinguish between sodium azide and nitrate, a widely used food preservative. (*Id.* at 173.)

In addition to the discovery listed above, Andriano seeks subpoenas duces tecum to employers and professional organizations for records relating to witness William Joe Collier, the defense expert used at trial, and the deposition of Michael Sweedo, another expert whom the defense retained before trial. (Doc. 45 at 45.) She also asks to expand the record to include Dr. Betterton's declaration (*id.* & Ex. 28); documents related to the hiring of Collier (*id.* & Ex. 8); a transcript of DeLozier's interview with PCR counsel (*id.* & Ex. 3); an article concerning sodium azide, which DeLozier sent to Patterson (*id.* & Ex. 4); and Sweedo's report and curriculum vitae (*id.* & Ex. 7). Andriano also seeks an evidentiary hearing (*id.* at 47).

Andriano did not raise the claim in state court. She argues that its default is excused by the ineffective assistance of PCR counsel. (*See* Doc. 45 at 42–43.) *Martinez* does not excuse the default because the underlying claim is without merit. *Sexton*, 679 F.3d at 1157.

Andriano contends that counsel performed ineffectively in retaining Collier as their expert because he was "a general chemist and criminalist" and was not specifically qualified to testify about sodium azide. (Doc. 17 at 172.) As a result, according to

Andriano, Collier could not adequately rebut the State's evidence that sodium azide was present in the food.

"The choice of what type of expert to use is one of trial strategy and deserves 'a heavy measure of deference.'" *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)); *see Harris v. Vasquez*, 949 F.2d 1497, 1525 (9th Cir. 1990). In *Turner*, the Ninth Circuit rejected the claim that counsel performed ineffectively by retaining a general psychologist and not an expert on PCP. 281 F.3d at 876. The argument that "a more specialized expert would have been more persuasive" was not enough to support a claim of ineffective assistance of counsel. *Id.*

In addition, Andriano cannot establish that she was prejudiced by counsel's failure to use a different expert. Speculation that different test results could have been obtained, showing no sodium azide in the food, is insufficient to establish prejudice. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (acknowledging that conjecture that a favorable expert might have been found cannot establish prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (concluding that speculation about how an expert might have testified is not enough to establish prejudice).

There was no reasonable probability that Andriano would have avoided the first-degree murder conviction based on challenges to the sodium azide evidence. Moreover, for prejudice to have resulted from the evidence of sodium azide in the food, jurors would have had to accept Andriano's unsupported testimony that Joe intended to commit suicide by poisoning himself and had directed Andriano's efforts to acquire the sodium azide.[13]

---

[13] Andriano testified that she and a former boyfriend researched poisons that could be used in Joe's suicide. To purchase the sodium azide Andriano provided the seller with a false name, a false business license, and a false shipping address. (RT 10/27/04 at 92–98.) She also prepared and sent the money order used to pay for the sodium azide. (RT 11/2/04 at 17–18.) Andriano testified that she and Joe prepared the sodium azide for his later consumption by emptying about 15 capsules of an herbal supplement and refilling the capsules with the poison. (*Id.* at 104–09.) She placed the sodium azide capsules in the supplement bottle and sealed the bottle, which Joe then placed in a bedroom closet where

Because PCR counsel did not perform ineffectively in failing to raise this claim, it remains defaulted and barred from federal review. The claim is denied.

Claim 19E:

Andriano alleges that counsel performed ineffectively by failing to request a jury instruction limiting consideration of evidence of her extramarital affairs and attempts to procure life insurance on her husband. (Doc. 17 at 190–93.) She seeks expansion of the record to include attorney Clark's declaration. (Doc. 45 at 48–49 & Ex. 25.) The request is denied. Clark's declaration is unnecessary for the Court to resolve this record-based claim. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Claim 20B:

Andriano alleges that counsel performed ineffectively by failing to investigate juror misconduct; namely, the jury's consideration of possible sentences as alleged in Claim 11. (Doc. 17 at 201–03.) She seeks the evidentiary development requested for that claim. (Doc. 45 at 50.)

Whether or not the default of this claim is excused by the performance of PCR counsel, Andriano's request for evidentiary development is denied. The information Andriano seeks is inadmissible under federal law. Juror testimony cannot be used to impeach a verdict unless "extrinsic influence or relationships have tainted the deliberations." *Tanner v. United States*, 483 U.S. 107, 120 (1987). Similarly, Rule 606(b)(1) prohibits juror testimony "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). The Rule further states that "[t]he court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* As relevant here, the only exceptions are questions of whether "extraneous prejudicial information was improperly brought to the jury's attention" or "outside influence was improperly brought

it remained until his suicide attempt. (*Id.* at 109.) After being taken into custody, Andriano phoned a coworker and asked her to hide items related to the sodium azide purchase that were in Andriano's business office. (RT 11/2/04 at 58.)

to bear upon any juror." Fed. R. Evid. 606(b)(2). These exceptions are inapplicable to the information Andriano seeks.

The jurors' alleged discussion of sentencing outcomes, including a parole-eligible sentence, did not involve extrinsic evidence. *See Raley v. Ylst*, 470 F.3d 792, 803 (9th Cir. 2006) ("The fact that Petitioner did not testify in his own defense is not extrinsic evidence. Although the jury's discussion of this issue clearly violated the trial court's instructions, what happened (or did not happen) in the courtroom was a part of the trial, not extrinsic to it."); *Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir. 2005), *rev'd on other grounds, Ayers v. Belmontes*, 549 U.S. 7 (2006) (explaining that jurors' discussion of whether defendant would be paroled was an "intrinsic jury process"). The jury did not learn information about Andriano's possible sentences "through outside contact, communication, or publicity," and the information "did not enter the jury room through an external, prohibited route." *United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir. 1997).

Because the information was part of the trial and not extrinsic, juror testimony about their deliberations is prohibited under Rule 606(b). The evidentiary development requested by Andriano is denied.

Claims 21C, 21D, and 21E:

In Claim 21C, Andriano alleges that appellate counsel performed ineffectively by failing to challenge the trial court's instruction advising jurors that she could be eligible for parole if not sentenced to death. (Doc. 17 at 213–14.) In Claim 21D, she alleges that appellate counsel performed ineffectively by failing to argue that Dr. Bayless was not qualified to testify about domestic violence. (*Id.* at 214.) In Claim 21E, she alleges that appellate counsel performed ineffectively by failing to expressly argue that her mitigation was sufficiently substantial to warrant leniency. (*Id.* at 215–18.)

*Martinez* does not apply to claims of ineffective assistance of appellate counsel. *Davila*, 137 S. Ct. at 2062–63. Therefore, the claims remain defaulted and barred from federal review.

In addition, evidentiary development is not warranted because the record is complete with respect to these aspects of appellate counsel's performance. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176; *Gray*, 800 F.2d at 647. Andriano has not identified any disputed facts relevant to these appellate ineffective assistance claims. *See Beardslee*, 358 F.3d at 585.

## IV.     CONCLUSION

For the reasons set forth above, Andriano's requests for evidentiary development are denied.

Accordingly,

**IT IS ORDERED** denying Andriano's motion for evidentiary development (Doc. 45).

**IT IS FURTHER ORDERED** denying Claims 6, 10, 11, 15, 18, 19A, and 21C, 21D, and 21E as procedurally defaulted and barred from federal review.

**IT IS FURTHER ORDERED** denying Claims 4, 17, 22, 31, 35, and 36 as meritless.

Dated this 30th day of August, 2018.

Susan R. Bolton
United States District Judge